UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| JUSTIN URBAN, | ) ) ) ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) ) | Civil Action No. 21-CV-11182-AK |
| ZURICH AMERICAN INSURANCE COMPANY, | ) ) ) ) | |
| Defendant. | ) ) | |

**MEMORANDUM AND ORDER
ON DEFENDANT'S MOTION FOR RECONSIDERATION**

**ANGEL KELLEY, D.J.**

On September 5, 2023, the Court denied Defendant Zurich American Insurance Company's ("Zurich") Motion to Limit Damages. [Dkt. 82]. Zurich filed a Motion to Limit Damages under M.G.L. c. 93A § 9, asserting that because its post-judgment, settlement offer was reasonable, it is entitled to limit its damages under the "safe harbor" provision of Chapter 93A. [Dkt. 69]. Plaintiff Justin Urban ("Urban") opposed the motion to limit damages, arguing that evaluating the safe harbor provision requires a fact inquiry that cannot be determined at this stage. [Dkt. 75]. The Court denied the Motion to Limit Damages, finding that the question of fact of whether Zurich's post-judgment, settlement offer was reasonable was better reserved for the factfinder. [Dkt. 82]. Zurich has since filed a Motion for Reconsideration of Denial of Motion to Limit Damages [Dkt. 83], which is the subject of this decision, arguing: 1) Urban's damages should be limited to the "injury actually suffered," which should be calculated using the loss of use of money calculation;

1

and 2) the Court, and not a factfinder, *must* determine whether Zurich's actions concerning settlement efforts were reasonable. [Dkt. 84].

I.    RELEVANT BACKGROUND

On September 12, 2014, during the course of his employment, an employee of Interstate Electrical Services Corporation ("Interstate") collided with Plaintiff Urban, who was riding his motorcycle. [Dkt. 1-3 at ¶¶ 3-4]. Urban was hospitalized for 26 days and incurred roughly $318,000 in medical bills. [Id. at ¶ 6]. In efforts to promptly settle the matter, Urban filed a claim with Zurich, and on September 24, 2014, provided a notice of claim and demand for the amount of the policy limit, pursuant to Massachusetts General Laws Chapter 175. [Id. at ¶ 9]. Zurich responded days later indicating a policy with one million dollars of coverage. [Id. at ¶ 10]. Based on this information, Urban submitted a demand for $1.5 million dollars,[1] along with a report from an accident reconstructionist, medical records, medical bills, and further documentation establishing liability. [Id. at ¶¶ 11-12]. Zurich countered the demand with a $100,000 offer, which Urban rejected and then filed a lawsuit on March 16, 2017, against the employee motorist and Interstate. [Id. at ¶¶ 14-15].

The parties engaged in discovery for over a year, which, according to Urban, further established that the insured employee was liable for the collision. [Id. at ¶ 16]. The discovery also included interrogatories and requests for production of documents requesting any and all insurance policies and coverage amounts. [Id. at 10-21]. Urban claims the attorney representing Zurich answered on behalf of Interstate and the insured, employee driver, indicating there were no other policies other than a one-million dollar policy with Zurich. [Dkt. 75 at 2]. The parties also

---

[1] The Joint Statement of Facts indicate an amount of $1.5 million dollars and not $1 million as reflected in the Complaint. [Dkt. 42-1 at ¶ 1].

attended mediation and continued to engage in settlement discussions in 2017 and 2018, during which Urban lowered his demand on at least three separate occasions. [Dkt. 42-1 at ¶¶ 5-8, 9, 10-12]. There is no indication in the alleged facts in the Complaint that Zurich tendered any other offer other than the $100,000 prior to attending mediation. The Joint Statement of Facts ("SOF"),[2] indicate that the parties first attended mediation on July 20, 2017. [Dkt. 42-1 at ¶ 5]. There, Urban reduced his demand to $950,000 and received a counteroffer of $125,000. [Id. at ¶¶ 6-7]. Urban then responded with $925,000. [Id. at ¶ 8]. On May 22, 2018, the parties attended a second mediation where Urban ultimately lowered his demand to $910,000 and Zurich countered with $200,000. [Id. at ¶¶ 10-14]. On the eve of trial, nearly three years after the conclusion of the second mediation, on January 27, 2021, counsel for Interstate provided an email to the state court indicating there was an excess insurance carrier. [Dkt. 1-3 at ¶ 18]. This was the first time Urban was made aware of the additional policy despite previous discovery requests for all insurance policies and limits. [Id. at 10].

Roughly two weeks prior to trial, on February 11, 2021, Zurich made a settlement offer of $300,000, and Urban countered with $500,000. [Id. at 19; Dkt. 42-1 at ¶ 16]. Six days later, Urban withdrew the $500,000 demand. [Dkt. 42-1 at ¶ 17]. On February 25, 2021, in the midst of the pandemic, the parties—Interstate, its employee, and Urban—went to trial before a three-bench panel concerning the collision. [Dkt. 1-3 at ¶ 20]. On March 4, 2021, the court entered a verdict in favor of Urban, finding the Interstate employee was 90% liable for the collision, and awarded

---

[2] Parties filed a Joint Statement of Agreed Upon Facts Regarding Settlement Negotiations ("SOF") [Dkt. 42] to resolve a prior dispute concerning the proposed depositions of Plaintiff's counsel. [Id.]. The facts contained within the SOF are limited to the chronology of offers and amounts made by the parties during settlement negotiations. Plaintiff has also objected to the majority, if not all, of the SOF on the grounds that M.G.L. c. 233, § 23C declares that discussions before a mediator are confidential, and that the information is inadmissible. [Dkt. 42-1 at n. 1-6].

Urban $1,420,679 (interest included), which Zurich immediately paid in full. [Dkt. 42-1 at ¶ 18, 20, 22].

On March 5, 2021, Urban served a demand letter to Zurich regarding their conduct leading up to the lawsuit, alleging violations under M.G.L. Chapter 176D. [Id. at ¶ 19]. Nearly a month later, Zurich countered the demand with a $70,000 offer using the "loss of use formula." The formula was calculated based on a $500,000 (hypothetical) settlement at an interest rate of 6%, from the date of the second mediation (October 22, 2018) to April 2, 2021. [Dkt. 70 at 3]. Urban declined the offer and filed the instant lawsuit alleging 93A and 176D claims in Middlesex Superior Court, which was removed to this Court, July of 2021. [Dkt. 1].

On May 9, 2023, Zurich filed a Motion to Limit Damages to the $70,000, seeking refuge under the Massachusetts "safe harbor provision" (Chapter 93A § 9), arguing that the $70,000 was a reasonable settlement offer; therefore, the damages should be limited to that amount, should this Court find Zurich's actions were not reasonable. [Dkts. 69, 70]. The Court denied its Motion and now addresses the instant Motion to Reconsider. [Dkt. 83]. For the reasons stated below, the Motion is **DENIED**.

## II. LEGAL STANDARD

Rule 60 of the Federal Rules of Civil Procedure provides that on motion and just terms, a district court may relieve a party from a final judgment or order. See Fed. R. Civ. P. 60. "The granting of a motion for reconsideration is 'an extraordinary remedy which should be used sparingly.'" Palmer v. Champion Mortg., 465 F.3d 24, 30 (1st Cir. 2006) (citation omitted). The court may grant a motion for reconsideration only "if the moving party presents newly discovered evidence, if there has been an intervening change in the law, or if the movant can demonstrate that

4

the original decision was based on a manifest error of law or was clearly unjust." United States v. Allen, 573 F.3d 42, 53 (1st Cir. 2009).

### III. DISCUSSION

Chapter 176D, Section 3, of the Massachusetts General Laws provides that insurance companies have an obligation to "effectuate prompt, fair and equitable settlements of claims in which liability has become reasonably clear." M.G.L. c. 176D, § 3(9)(f); Gore v. Arbella Mut. Ins. Co., 932 N.E.2d 837, 845 (2010). Chapter 93A of the Massachusetts General Laws is the relief for such cause of action for Chapter 176D violations. Capitol Specialty Ins. Corp. v. Higgins, 953 F.3d 95, 105 (1st Cir. 2020). In other words, Chapter 93A provides the statutory basis for damages where an insurer has engaged in unfair or deceptive claims-handling practices and has violated Chapter 176D. Hopkins v. Liberty Mut. Ins. Co., 750 N.E.2d 943, 949 (2001); see M.G.L. c. 176D, § 3 (describing unfair methods and deceptive insurance practices); R.W. Granger & Sons, Inc. v. J & S Insulation, Inc., 754 N.E.2d 668, 680 (2001). In cases where insurers have failed to effectuate prompt and fair settlements as required by Chapter 176D or have engaged in unfair or deceptive conduct, "recovery shall be in the amount of *actual damages*; or up to three, but not less than two, times such amount" if the violative conduct is wilful or knowing. R.W. Granger & Sons, Inc., 754 N.E.2d at 680; M.G.L. c. 93A, §9(3).

Following an amendment of the statute in 1989,[3] the statute specified that if the conduct was wilful or knowing, "actual damages" was to be "the amount of the judgment on all claims arising out of the same and underlying transaction or occurrence." R.W. Granger & Sons, Inc., 754 N.E.2d at 680 (quoting M.G.L c. 93A, St.1989, c. 580, §2). This amendment is intended to

---

[3] Importantly, the 1989 amendment was a legislative response to earlier cases that limited damages otherwise subject to multiple damages, to the loss of use calculation. See e.g., Clegg v. Butler, 676 N.E.2d 1134, 1142 (1997). The intent was to substantially increase the damages insurers faced who wilfully and knowingly violated the statute.

ensure that in cases where the punitive multiplication of damages is appropriate; both the accrued interest of the judgment as well as the judgment itself, collectively are multiplied. Cohen v. Liberty Mut. Ins. Co., 673 N.E.2d 84, 89 (1996); see also Rhodes v. AIG Domestic Claims, Inc., 961 N.E.2d 1067, 1079 (2012) ("[I]t is clearly the case that if knowing or wilful prejudgment conduct causes injury, the proper measure of damages would be the underlying tort judgment."); R.W. Granger & Sons, Inc., 754 N.E.2d at 683 (prejudgment interest forms part of underlying judgment and therefore is multiplied in computing award under G. L. c. 93A). Notwithstanding this amendment, even where there is a judgment for an underlying matter, the amount of the judgment is not used as a base to calculate the damages, where only single damages are warranted. R.W. Granger & Sons, Inc., 754 N.E.2d at 681. In other words, where there is an underlying judgment, "but the [Chapter] 93A violation gives rise to single damages only because the violation was not wilful or knowing, the 1989 amendment is inapplicable—[the amendment] only applies to damages to be multiplied by the court [for knowing or wilful violations]. Accordingly, the single damages would be calculated in the same manner as they were before[4] the 1989 amendment." Rhodes, 961 N.E.2d at 1078 n.19 (internal quotation marks and citation omitted).

Where there are single damages, "[i]t is true that the [Supreme Judicial Court] has stated that the measure of actual damages is 'typically [the] loss of the use of such funds from the time when the claim should have been paid to the time that a settlement or judgment was paid.' But the

---

[4] Prior to the amendment, to calculate damages, courts looked to the foreseeable or predictable injuries resulting from the failure to settle. See Wallace v. Am. Mfrs. Mut. Ins. Co., 494 N.E.2d 35, 38 (Mass. App. Ct. 1986) ("The cost (in the form of interest) of such borrowing was a predictable result of the failure to settle."); see also Yeagle v. Aetna Cas. & Sur. Co., 679 N.E.2d 248, 251 (Mass. App. Ct. 1997) ("It was long understood that damages under c. 93A, § 9(3), were those 'caused' by the unfair practice, as distinct and different from any recovery on the underlying claim."). The loss of use formula was often determined to be the foreseeable or predictable injury. See e.g., Bertassi v. Allstate Ins. Co., 522 N.E.2d 949, 953 (Mass. 1988) ("The plaintiff, then, is entitled to damages under G.L. c. 93A, § 9(3), in the form of interest, for his loss of use of money during those periods the money that was due him remained unpaid.")

6

Supreme Judicial Court ("SJC") has also made clear that damages, including emotional distress damages and damages from fear of financial ruin, can result from delayed payment by insurers and are recoverable as actual damages under c. 93A and c. 176D." Capitol Specialty Ins. Corp., 953 F.3d at 110 (quoting Rhodes, 961 N.E.2d at 1077). One is not required to solely rely upon the loss of use damages and ignore other potential damages that may result, even where single damages are most appropriate. See Rhodes, 961 N.E.2d at 1078 n.20 (noting the refusal to settle promptly can result in "plaintiffs . . . suffer[ing] the costs and frustrations of litigation, as well as the fear of financial ruin, during the appeal process"); Chery v. Metro. Prop. & Cas. Ins. Co., 948 N.E.2d 1278, 1280-81 (2011) (finding that plaintiff demonstrated injuries from Chapter 176D violations in the form of being forced to litigate to receive benefits and emotional distress due to unpaid medical bills); cf. Haddad v. Gonzalez, 576 N.E.2d 658, 667-68 (1991) (concluding that Chapter 93A allows for damages for intentional infliction of emotional distress). The actual damage must simply be "those losses which were the foreseeable consequence of . . . unfair or deceptive conduct." Cohen, 673 N.E.2d at 89.

### A. Chapter 93A Safe Harbor Provision

At issue in this motion is how the safe harbor provision of Chapter 93A is integrated into the Chapter 176D analysis. Section 9(3) of Chapter 93A provides that if a recipient of a demand letter timely tenders a written settlement offer and that offer is rejected, the recipient may "limit damages" where "the court finds that the relief tendered was reasonable in relation to the *injury actually suffered* by the petitioner." M.G.L. c. 93A § 9(3) (emphasis added). Looking to the plain language of the statute, there is no statement or requirement that courts must use a particular formula for the "injury actually suffered." Id. There is no clear indication that the meaning of "injury actually suffered" is meant to carry the same meaning as the "actual damages" provision

for determining damages for Chapter 176D violations. The court in Calandro v. Sedgwick Claims Management Services addressed this issue, when the defendants argued that it was entitled to the safe harbor provision, regardless of its behavior leading up to trial. No. CV 15-10533, 2017 WL 1496915, at *4 (D. Mass. Apr. 25, 2017), on reconsideration, 264 F. Supp. 3d 321 (D. Mass. 2017). In that case, defendant tendered a timely, reasonable settlement offer after the plaintiff had received a judgment in the underlying case and had subsequently served demand letters to defendants for its unfair conduct under Chapters 176D and 93A. Id. The Calandro court ultimately determined on a motion to reconsider that the injury actually suffered, and the reasonableness of the offer, must be judged in relation to the loss of use model because the 1989 amendment fails to indicate whether the revisions apply to the safe harbor provision. Calandro v. Sedgwick Claims Mgmt. Servs., 264 F. Supp. 3d 321, 324 (D. Mass. 2017). This Court parts ways with the Calandro court in its view that the ambiguity in the application of the 1989 amendment leaves the loss of use formula as the default option regarding the meaning of "injury actually suffered." Calandro inserts the standard from Clegg to measure reasonableness with regard to the safe harbor provision. See Calandro, 264 F. Supp. 3d at 324 (quoting Clegg, 676 N.E.2d at 1142) ("The reasonableness of the . . . offer must be judged in relation to 'the interest lost on the money wrongfully withheld by the insurer, compensating claimants for the costs and expenses directly resulting from the insurer's conduct.'"). However, the safe harbor provision was never invoked by defendants in Clegg, nor was it ever discussed. The question there was simply whether the underlying judgment could serve as a basis for damages where there was no judgment in the underlying matter, with respect to "actual damages" under Chapter 176D. See Clegg, 676 N.E.2d at 1142 (discussing the 1989 change to the definition of "actual damages").

No plain reading of Section 9(3) suggests that "actual damages" and "injury actually suffered" are interchangeable or equivalent in meaning. Even if the two terms are symbiotic, there is certainly no case law this Court has come across that suggests the Court is solely confined to the loss of use formula for the "injury actually suffered." A plain reading of the phrase "injury actually suffered" suggests that it can account for various forms of injury—such as any injury resulting from being forced to litigate—so long as it was an "injury actually suffered." See Capitol Specialty Ins. Corp., 953 F.3d 95 at 110 (discussing other injuries available besides the loss of use formula with respect to single damages for Chapter 176D violations). The only restriction that Section 9(3) appears to have regarding the safe harbor provision and available damages is the protection against punitive damages. See M.G.L. c. 93A § 9(3).[5] This is based on the assumption that the settlement offer was found to be reasonable.

Zurich challenges the instant Court's discussion (or dicta) in its September 5, 2023, Order, that even if the Court were to determine whether Zurich's offer was reasonable—which it declined to do at that juncture—it disagreed with the application of the interest lost theory with regard to the safe harbor provision. [See Dkt. 82]. For the aforementioned reasons, the Court stands by its declination to strictly apply the loss of use theory as the Defendant urges. Furthermore, Urban's Chapter 176D and 93A claim alleges that Zurich engaged in unfair conduct leading up to the underlying trial, to include the failure to "effectuate a prompt, fair and equitable settlement once liability [became] reasonably clear." Rawan v. Cont'l Cas. Co., 136 N.E.3d 327, 329 (2019). Zurich has failed to point to a case that mandates that the Court disregard Zurich's actions leading up to the underlying trial, simply because Zurich made a post-judgment payment within 30 days.

---

[5] Chapter 93A, Section 9(3) makes a distinction between damages that are limited to "the injury actually suffered" and "recovery [that] shall be in the amount of actual damages or twenty-five dollars . . . or up to three but not less than two times such amount . . ." M.G.L. c. 93A § 9(3). This distinction suggests that the "injury actually suffered" may not include the punitive double or treble damages.

9

In fact, evaluating Zurich's prejudgment conduct is material to assessing whether its post judgment settlement was reasonable. See Vt. Mut. Ins. Co. v. Toland, No. CV 19-12545-WGY, 2022 WL 4481508, at *6 (D. Mass. Sept. 27, 2022) ("[D]octrinally . . . the insurer must make a sensible settlement offer when liability is reasonably clear . . . [which] is determined by the totality of the circumstances, with the insurer's good faith being an important relevant factor."). For example, if Zurich's prejudgment conduct is found to be wilfully or knowingly violative of Chapter 176D, then Zurich's post-judgment settlement offer using the loss of use calculation, may be unreasonable in light of the injury caused.

Lastly, to the extent that the September 5 Order caused Zurich's confusion and suggests that the multiplication of the judgment would be appropriate any time there is an underlying judgment, the Court seeks to clarify that such a bright line rule is not supported by the language in Section 9(3) or the case law pertaining to Chapter 176D violations. See Gore, 932 N.E.2d at 849 (stating a plaintiff must prove that defendant wilfully or knowingly violated 93A for punitive damages).

### B. Reasonableness

Briefly, the Court addresses Zurich's argument that the Court must determine reasonableness rather than the factfinder. It is well settled that the issue of reasonableness is a question of fact that is ordinarily determined by a factfinder. See id. at 846 (discussing that reasonableness is determined by the "circumstances of a particular case" and whether bad faith was involved is a "question for the finder of fact"). There are circumstances where courts have chosen to determine reasonableness as a matter of law. However, in many of those cases, for example, there were no disputed material facts preventing either party from prevailing. See e.g., Bobick v. U.S. Fidelity & Guar. Co., 790 N.E.2d 653, 658 (2003) (discussing that reasonableness may be determined by the court "in circumstances when undisputed material facts in the record

10

demonstrate that the plaintiff has 'no reasonable expectation of proving an essential element' of his case.'"); Hache v. AIG Claims, Inc., No. 20-CV-10652, 2023 WL 9743750, at *28 (D. Mass. Sept. 12, 2023) (deciding reasonableness at summary judgment where there was no dispute of material fact indicating liability was reasonably clear to create a duty to settle). That is not the case here. The Motion to Limit Damages was filed prior to summary judgment and prior to the establishment of the comprehensive statement of facts. The parties filed an Agreed Upon Statement of Facts Regarding Settlement Negotiations ("SOF"), however, Urban objected to most of the facts based on mediation privilege. There were also facts used in the motion papers at issue that were not included in the SOF, as well as conflicting facts throughout.

Even if the parties were to solely rely upon the facts in the SOF for the motion papers, the SOF is a barebones list of dates and settlement offer amounts, which is insufficient to adequately evaluate reasonableness. Ultimately, the determination of damages will require considering more than just whether the proposed settlement amounts were reasonable. The evaluation of damages "takes into account totality of the circumstances"[6] and considers evidence, without limitation, such as "insurance industry practices in similar circumstances, expert testimony . . . the defendant's own evaluation of the plaintiff's claim, and advice given to the insurance company on the probability of success at trial." Hache, WL 9743750, at *24 (quoting O'Leary-Alison v. Metro. Prop. & Cas. Ins. Co., 752 N.E.2d, 795, 798 n.3 (2003)). Such an evaluation is better suited for a factfinder.

Ultimately, Zurich has not demonstrated there is newly discovered evidence, an intervening change in the law, or that the original decision to deny its Motion to Limit Damages was based on a manifest error of law or was clearly unjust. See United States v. Allen, 573 F.3d at 53 (stating

---

[6] Scott v. Vt. Mut. Ins. Co., No. 07–12081–DPW, WL 4436984, at *8 (D. Mass. Sept. 22, 2011).

the conditions where a motion to reconsider is appropriate).  For the aforementioned reasons, Zurich's Motion to Reconsider is **DENIED**.

**SO ORDERED.**

Date: June 14, 2024                                              /s/ Angel Kelley
                                                                 Hon. Angel Kelley
                                                                 United States District Judge